FILED

2013 Aug-01  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STEPHEN WADE THORNTON** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-3424-NE** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Stephen Wade Thornton, commenced this action on September 21, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying his claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence, nor in accordance with applicable legal standards.  Specifically, claimant asserts that ALJ erred in:  (*i*) failing to adequately address the effects of anxiety, obesity, and pain on claimant's Residual Functional Capacity ("RFC"); (*ii*) finding that claimant could "constantly" stoop, crouch , and climb stairs; and (*iii*) finding that claimant could perform the work of a heavy equipment operator at the medium exertion level.  Upon review of the record, the court concludes that claimant's contentions are without merit.

## A.    Failing to Adequately Address the Effects of Anxiety, Obesity, and Pain on Claimant's RFC

Claimant contends that the ALJ "did not adequately address the effects of anxiety and obesity as well as pain on the RFC."[1]  Social Security Ruling 02-1p has established the following standard for evaluating the effects of obesity:

> Obesity can cause limitation of function.  The functions likely to be limited depend on many factors, including where the excess weight is carried.  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching.  The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers.  The ability to tolerate extreme heat, humidity, or hazards may also be affected.

---

[1] Doc. no. 7 (Claimant's Brief), at 9-10.

The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time.  As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings.  For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental

limitations.

SSR 02-1P, 2000 WL 628049, at *6-7.

To demonstrate that pain or another subjective symptom renders him disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)).   If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Social Security regulations state the following with regard to the Commissioner's duty in evaluating multiple impairments:

> In determining whether your physical or mental impairment or

impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 1523.  *See also* 20 C.F.R.  §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe — in determining the claimant's residual functional capacity).

Here, the ALJ found that claimant "does not have an impairment *or combination of impairments* that meets of medically equals one of the listed impairments."[2]

More specifically, the ALJ concluded that "claimant takes medicine for the anxiety and does not have any work-related limitations resulting from it," and noted that "claimant's attorney does not allege that the . . . anxiety is severe."[3]

Further, the ALJ decided that "claimant's medically determinable impairments could reasonably be expected to cause the alleged pain and dysfunction; however, the claimant's statements concerning the intensity, persistence and limiting effects of

---

[2] Tr. 26 (emphasis supplied).

[3] Tr. 25.

5

these symptoms are not credible to the extent they are inconsistent with the [RFC]."[4] The ALJ also determined that claimant's "impairments, including obesity, do not restrict his ability to perform routine movement and necessary physical activity within a limited-range, medium [exertion] work environment."[5]

The ALJ based those findings on the evidence in the record. Claimant was able to work as a heavy equipment operator at the heavy exertion level while being treated for degenerative disc and joint disease for many years before his alleged disability onset on October 3, 2008.[6] He did not obtain an evaluation of his knee pain, an opinion from a back surgeon, or a recommendation to have surgery.[7] Further, he did not receive any additional or unusual treatment around October 3, 2008; to the contrary, there was a gap in treatment between August of 2008 and January of 2009.[8]

The ALJ also noted that claimant was laid off from his job on the same date that he allegedly became disabled,[9] and which time he began to receive unemployment compensation.[10] Further, his subsequent treatment records do not show that his

---

[4] Tr. 27 (alteration supplied).
[5] Tr. 29 (alteration supplied).
[6] Tr. 31, 157-63.
[7] Tr. 50, 184.
[8] Tr. 28, 163, 167.
[9] Tr. 106.
[10] Tr. 40, 42.

condition worsened after he stopped working.[11]  Rather, claimant's treating physician noted in January of 2009 that his "overall pain [is] better since out of work,"[12] and observed in August of 2010 that he was "doing well" on his medication, was "functional without side effects," and was able to perform [activities] with much less difficulty."[13]   Claimant's reported activities included "shopping, driving, independently caring for his personal needs, and occasionally cooking."[14]

For all of those reasons, the ALJ sufficiently assessed all of claimant's reported conditions.  Further, his decision is supported by substantial evidence.

## B.   Finding that Claimant Could "Constantly" Stoop, Crouch and Climb Stairs

In evaluating claimant's RFC, the ALJ found that claimant could:  frequently walk and carry up to fifty pounds; constantly stoop, crouch, and climb stairs; and occasionally sit, stand, and balance.[15]  Claimant takes issue with the finding that he could "constantly" stoop, crouch, and climb stairs, and argues that the finding is inconsistent with the conclusion that he could only "occasionally" stand.[16]

The ALJ explained that he adopted the assessment reached by physical therapist

---

[11] Tr. 28, 167-68, 226-62.

[12] Tr. 167 (alteration supplied).

[13] Tr. 231 (alteration supplied).

[14] Tr. 28.

[15] Tr. 26, 199-200.

[16] Doc. no. 7 (Claimant's Brief), at 6-7.

Jay Austin and physical therapist assistant Jay Schug after lengthy vocational testing of claimant.[17]   Upon review, the only difference between the ALJ's findings and Austin and Schug's assessment is that the ALJ stated that claimant could only sit and stand "occasionally," while Austin and Schug stated that he could stand "frequently."[18]

Based on the ALJ's stated intention of adopting Austin and Schug's assessment in its entirety, this court holds that the ALJ erred in holding that claimant could only sit and stand "occasionally," and that the record reflects that claimant could, in fact, do so "frequently."[19]   However, the error is harmless.  *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *see also Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000) (stating that "a remand is not essential if it will amount to no more than an empty exercise").

The vocational expert testified that an individual with the *more* restrictive RFC that was adopted by the ALJ could perform the duties of more than 300,000 jobs nationally, in addition to claimant's past work as a heavy equipment operator as it is generally performed in the economy (*i.e.*, at the medium exertion level, as opposed to

---

[17] Tr. 30.

[18] Tr. 26.

[19] *Id.*

8

the heavy exertion level).[20]   Accordingly, even if the ALJ had found that claimant could stand "frequently," that finding would not have changed his conclusion that claimant is not disabled.

## C.   Finding that Claimant Could Perform the Work of a Heavy Equipment Operator at the Medium Exertion Level

As explained above, the ALJ found that claimant could perform his past work as a heavy equipment operator at the medium exertion level.[21]   Claimant disputes that finding because a note written by his treating physician on June 24, 2009 states as follows:  "Heavy equipment – unable to do."[22]

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*.  Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a

---

[20] Tr. 51-54.

[21] *Id.*

[22] Doc. no. 7 (Claimant's Brief), at 7 (quoting Tr. 28, 168).

claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.   *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

As an initial matter, the note from claimant's treating physician is ambiguous. Although claimant performed his duties as a heavy equipment operator at the heavy exertion level, those duties are generally performed in the economy at the medium exertion level.[23]   Accordingly, it is not clear whether claimant's treating physician intended the statement "Heavy equipment – unable to do"[24] to indicate that claimant

---

[23] Tr. 30.

[24] Doc. no. 7 (Claimant's Brief), at 7 (quoting Tr. 28, 168).

10

could not perform the work of a heavy equipment operator *at all*, or that he could not perform such work in the manner in which he was accustomed to performing it:  *i.e.*, *at the heavy exertion level*.

To the extent that the physician intended the former meaning, the note is conclusory and constitutes a statement that claimant is unable to work, which goes to the ultimate issue of his disability status and, thus, is not entitled to deference.  *See* 20 C.F.R. § 404.1527(d); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986); SSR 96-5p, 1996 WL 374183. To the extent that the physician intended the latter meaning, the note is consistent with the ALJ's finding that claimant could perform his work at the medium exertion level. As discussed above, that finding is supported by substantial evidence.

In any event, the ALJ also found, in the alternative, that claimant could perform "other jobs that exist in significant numbers in the national economy."[25]  Thus, the issue of whether claimant can return to his former job does not affect the outcome of this action.

Consistent with the foregoing, the court concludes that the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed

---

[25] Tr. 30.

11

against claimant.  The Clerk is directed to close this file.

DONE this 1st day of August, 2013.

_____
United States District Judge